IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| LAUNIUPOKO WATER CO., INC. a domestic corporation; LAUNIUPOKO IRRIGATION CO., INC., a domestic corporation; and OLOWALU WATER COMPANY, INC., a domestic corporation,<br><br>      Plaintiffs,<br><br>   vs.<br><br>J-M MANUFACTURING COMPANY, INC., d/b/a JM Eagle, a Delaware corporation; FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation; DOE HDPE MANUFACTURERS 1-20; and ROE RESIN COMPANIES 1-20,<br><br>      Defendants. | CIVIL NO. 14-00303 DKW-KSC<br><br>**ORDER GRANTING J-M MANUFACTURING COMPANY, INC. AND FORMOSA PLASTICS CORPORATION, U.S.A.'S MOTIONS TO DISMISS** |

## **ORDER GRANTING J-M MANUFACTURING COMPANY, INC. AND FORMOSA PLASTICS CORPORATION, U.S.A.'S MOTIONS TO DISMISS**

### **INTRODUCTION**

Defendants pipe and resin manufacturers seek dismissal of the complaint filed

by a group of privately owned water companies who allege damage to their water

1

distribution systems caused by Defendants' defective products. Plaintiffs claim that, at an unknown time within the past ten years, Defendants' defectively manufactured and designed piping products began leaking and bursting, causing substantial water loss and damaging both Plaintiffs' system and the surrounding property. Because Plaintiffs' strict liability and negligence-based claims are barred by the economic loss doctrine, and otherwise do not meet the requirements of Federal Rules of Civil Procedure 8 and 9, the Court GRANTS Defendants' motions to dismiss.

## BACKGROUND

Plaintiffs are privately owned water companies serving subdivisions on West Maui, Hawaiʻi. Launiupoko Water Co., Inc., Launiupoko Irrigation Co., Inc., and Olowalu Water Co., Inc. hold Certificates of Public Convenience and Necessity from the State of Hawaiʻi Public Utilities Commission to provide potable drinking water and nonpotable agricultural irrigation water to those regions. Complaint ¶¶ 3-5.

J-M Manufacturing Co., Inc., doing business as JM Eagle, is a manufacturer and distributor of High Density Polyethylene products ("HDPE"). Formosa Plastics Corp., U.S.A., is a manufacturer and supplier of resin used to manufacture a variety of products, including the JM Eagle HDPE product line. According to

2

Plaintiffs, Defendants manufactured and distributed HDPE cold water service pipe and tubing products, resins and additives ("HDPE Products") under the brand names JM Eagle, Eagle, and Hastings Eagle Geo-Flo, among others. Complaint ¶¶ 6-7, 10.

Plaintiffs allege that "within the last 10 years, contractors and developers in Maui began purchasing and installing JM Eagle's HDPE Products in residential subdivisions." Complaint ¶ 19. They claim that JM Eagle's HDPE Products were installed in Plaintiffs' service areas in the laterals that run from the main service lines to the water meters. Within a few years of installation, Plaintiffs began making repairs of the lateral lines due to leaking or bursting pipes. They claim that the leaks and bursts occurred randomly throughout the service areas and were not inconsistent with routine water system maintenance. Thereafter, Plaintiffs began to notice an increase in system losses over the historical norm, which appeared to be related to leaks or bursts of the lateral line pipes. As a result of the leaks and bursts, Plaintiffs claim that more water was lost in the system than was being delivered to its customers. Complaint ¶¶ 19-20, 25.

Plaintiffs allege damage to "surrounding property including, but not limited to, streets, sidewalks, landscaping and driveways," as well as to their water distribution systems. Complaint ¶¶ 23-26. They contend that the JM Eagle HDPE

3

Products and Formosa Plastics resin and/or additives have design and manufacturing defects, leading to premature failure of the HDPE Products. Plaintiffs assert claims for (1) products liability (Count I); (2) strict liability (Count II); (3) breach of implied warranty (Count III); (4) breach of the warranty of merchantability (Count IV); (5) negligence (Count V); and (6) misrepresentation/fraud (Count VI). Defendants move to dismiss each of these claims.

## STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to

4

infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## **DISCUSSION**

### I. **The Economic Loss Rule Bars Plaintiffs' Products Liability and Negligence-Based Claims**

Defendants seek a ruling that Plaintiffs' products liability and negligence-based claims are barred by the economic loss rule because Plaintiffs

5

allege purely economic losses.   Plaintiffs assert that the rule is inapplicable because the HDPE Products damaged "other property."

The economic loss rule precludes a plaintiff from recovering for purely economic losses in tort.[1]   *See Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc.,* 115 Hawai'i 232, 167 P.3d 225 (2007); *City Exp., Inc., v. Express Partners*, 87 Hawai'i 466, 469, 959 P.2d 836, 839 (1998); *State of Hawaii ex rel. Bronster v. U.S. Steel Corp.*, 82 Hawai'i 32, 919 P.2d 294 (1996).   The rule is codified at Hawaii Revised Statutes ("HRS") § 663-1.2, which provides that "[n]o person may recover damages, including punitive damages, in tort for a breach of a

---

[1]As the district court explained in *Keahole Point Fish LLC v. Skretting Canada Inc.*:

> "Economic losses encompass [damages] for inadequate value, costs of repair and replacement of [the] defective product, or consequent loss of profits-without any claim of personal injury or damage to other property.' " *Newtown Meadows*, 115 Hawai'i at 293, 167 P.3d at 286 (citations and quotations omitted) (alteration in original); *City Express*, 87 Hawai'i at 469, 959 P.2d at 839 (in cases involving negligent design of building, economic loss damages are those pertaining solely to the costs related to the operation and value of the building itself, i.e. additional costs, lost rent, the cost of remedying the alleged building defects, and the difference between the value of the building as designed and the value it would have had if it had been properly designed; personal injuries caused by the defective design or damage to property other than the building itself are excluded); *Millenkamp v. Davisco Foods Int'l, Inc.*, 391 F. Supp. 2d 872, 878 (D. Idaho 2005) ("'Economic loss' includes costs of repair and replacement of defective property which is the subject of the [litigation], as well as commercial loss of profits or use . . . Alternatively, property damage encompasses damage to property other than that which is the subject of the [litigation].") (citations omitted).

*Keahole Point Fish LLC v. Skretting Canada Inc.*, 971 F. Supp. 2d 1017, 1029-30 (D. Haw. 2013).

contract in the absence of conduct that: (1) Violated a duty that is independently recognized by principles of tort law; and (2) Transcended the breach of the contract."

> The crux of [the economic loss rule] is the premise that economic interests are protected, if at all, by contract principles, rather than tort principles. Contract law is designed to enforce the expectancy interests created by agreement between the parties and seeks to enforce standards of quality. This standard of quality must be defined by reference to that which the parties have agreed upon. In contrast, tort law is designed to secure the protection of all citizens from the danger of physical harm to their persons or to their property and seeks to enforce standards of conduct. These standards are imposed by society, without regard to any agreement. Tort law has not traditionally protected strictly economic interests related to product quality—in other words, courts have generally refused to create a duty in tort to prevent such economic losses.

*Newtown Meadows*, 115 Hawaiʻi at 291, 167 P.3d at 284 (quoting *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (Nev. 2000), overruled on other grounds by *Olson v. Richard*, 120 Nev. 240, 89 P.3d 31 (Nev. 2004)). Courts apply the economic loss rule to bar economic recovery in tort cases such as this, "where there is no contract and[,] thus[,] no privity" between the parties. *Newtown Meadows*, 115 Hawaiʻi at 287, 167 P.3d at 280 (internal citations omitted).

Under the economic loss rule, "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a

product from injuring itself." *Leis Family Ltd. P'ship v. Silversword Eng'rg*, 126 Hawai'i 532, 538-39, 273 P.3d 1218, 1224-25 (Ct. App. 2012) (quoting *Bronster*, 82 Hawai'i at 39, 919 P.2d at 301). The rule also applies to a negligent design and/or manufacturing theory, *Bronster*, 82 Hawai'i at 40, 919 P.2d at 302, and to negligent misrepresentation. *City Express*, 87 Hawai'i at 470, 959 P.2d at 840; *Keahole Point Fish LLC v. Skretting Canada Inc.*, 971 F. Supp. 2d 1017, 1028-29 (D. Haw. 2013).

In this case, tort damages for economic losses relating to the HDPE Products used in the water systems are barred under the doctrine. Plaintiffs' allegations that the HDPE Products were defective and damaged, leading to increased operational costs, water loss, and increased repair and maintenance costs are consequential damages that arose precisely from the alleged defects. *See* Complaint ¶¶ 23-26. Any damage caused by the leaks and bursts in the pipes to the appurtenant valves and integrated systems are similarly covered by the economic loss rule. A claim based upon damage to the HDPE Products themselves "is most naturally understood as a warranty claim." *East River S.S. Corp.,* 476 U.S. at 872.

An exception to the rule exists when the finished product causes damage to "other property." *See Kawamata Farms, Inc. v. United Agric. Prods.*, 86 Hawai'i 214, 254, 948 P.2d 1055, 1095 (1997). For example, *Newtown Meadows* examined

whether cracked floor tile, demising walls, skewed door jambs and windows, and damage caused by termites entering through floor cracks, was "other property" damaged as a result of the negligent construction of concrete slabs. *Newtown Meadows*, 115 Hawai'i at 293, 167 P.3d at 286. The *Newtown Meadows* court concluded that the plaintiff's damages consisted of purely economic losses, and noted that the plaintiff did not seek damages for personal injuries. *Id.* at 294, 167 P.3d at 287. In reaching this conclusion, the Hawai'i Supreme Court relied on cases applying the economic loss rule to situations where the defective product is a component of an integrated system or structure and causes damage to other components within the system/structure. *Id.* at 293-94, 167 P.3d at 286-87. *Newtown Meadows* held that "even assuming arguendo that the cracked floor tiles, demising walls, skewed door jambs and windows, and damage caused by termites entering through the cracks were caused by the allegedly defective floor slabs, such consequential damages do not constitute damage to 'other property.'" *Id.* at 294-95, 167 P.3d at 287-88. This district has interpreted *Newtown Meadows* to extend the reach of the economic loss rule to preclude "purely economic losses including 'consequential damages' to property other than the allegedly defective product." *Burlington Ins. Co. v. United Coatings Mfg. Co., Inc.*, 518 F. Supp. 2d 1241, 1254 (D. Haw. 2007).

Plaintiffs contend that the "other property" exception applies here to damage to "surrounding property" including, streets, sidewalks, landscaping and driveways. Complaint ¶¶ 23. In their opposition and at the hearing, they further specified that there was damage to a cul-de-sac above the water system's pipes. This vague assertion is insufficient to establish that *Plaintiffs* suffered any injury as a result of the alleged defective products. It is not clear who owns the damaged road above the leaking pipes, whether the road has been repaired, who repaired it, and whether Plaintiffs were responsible for the costs of the unspecified repairs to the property. In any event, it appears that such harm is foreseeable and constitutes consequential damages resulting from the leaks and bursts. Like the cracked floor tiles, demising walls, skewed door jambs and windows, and damages from termites entering cracks all caused by defective concrete floor slabs in *Newtown Meadows*, or the defective wall coating that streaked and fell into an adjacent parking lot in *Burlington*, the damage to roads above the water distribution systems does not appear to fall outside the ambit of the economic loss rule because it "constitutes pecuniary consequential damage." *Burlington*, 518 F. Supp. 2d. at 1254.

Nor is the Court persuaded by Plaintiffs' argument that these claims should survive because the HDPE Products did not meet industry standards, including those established by ASTM, AWAA, ANSI/NSF and UL. Complaint ¶ 16. To the

extent that Hawaii courts recognize an exception to the economic loss rule for violations of building codes in cases against residential home-builders, the exception does not extend to industry standards, such as those allegedly violated here, which are not codified by state law. As this district court has noted, the exception applies "expressly to builders," and "only in the residential real estate construction context," and does "not apply in the product liability context" against a manufacturer. *Baker v. Castle & Cooke Homes Haw., Inc.,* 2012 WL 145967, at *11 (D. Haw. Apr. 25, 2012).

Accordingly, the Court dismisses with prejudice Plaintiffs' tort claims sounding in negligence, products liability, and strict liability. Counts I, II, V, and the portion of Count VI alleging negligent misrepresentation are barred by the economic loss rule.

## II.     **Plaintiffs' Fraud Claims Do Not Satisfy Rule 9(b)**

Plaintiffs' claims for fraud fail to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. To succeed on a fraudulent misrepresentation claim, a plaintiff must show that "(1) false representations were made by defendants; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon these false representations; and (4) plaintiff did rely upon them." *Newtown Meadows*, 115 Hawai'i at 263, 167 P.3d at

256 (quoting *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000)). Fraudulent misrepresentation claims are subject to the heightened pleading requirements of Rule 9(b). *Radford v. Wells Fargo Bank,* 2011 WL 1833020 (D. Haw. May 13, 2011) (applying Rule 9(b) to a plaintiff's fraudulent misrepresentation claim).

Rule 9(b) requires that, when fraud or mistake is alleged, "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). An allegation of fraud is sufficient if it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (internal citations and quotations omitted). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, the complaint does not sufficiently identify the circumstances that constitute fraud, including such facts as the times, dates, places, or other details of the alleged fraudulent activity. *Neubronner*, 6 F.3d at 672. Nor do Plaintiffs

sufficiently explain why the unspecified conduct or statements are fraudulent.² *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir.1994) (en banc), superseded by statute on other grounds by 15 U.S.C. § 78u–4. Plaintiffs allege only that Defendants "misrepresented and/or certified to prospective purchasers and users that the HDPE Products met the respective requirements and standards of AWWA, ASTM, ANSI-MSK and UL in existence at the time of manufacture," and that Plaintiffs relied upon these representations and certifications "when allowing them to be installed in the water system service areas in Maui, Hawaii and in assuming responsibility for the maintenance of the HDPE Products after installation." Complaint ¶¶ 66-67. These allegations do not identify the circumstances constituting fraud as to each Defendant, do not specify how each Defendant could have intended to induce reliance by entities, including Plaintiffs, with whom Defendants had no relationship, or otherwise permit Defendants to prepare an adequate answer from the allegations.

---

²The statements made by Plaintiffs at the hearing and in their opposition are not within the four corners of the complaint, are not incorporated by reference, and are not properly before the Court on a Rule 12(b)(6) motion to dismiss. *See Cooper v. Picket*, 137 F.3d 616, 622-23 (9th Cir. 1997).

Accordingly, Count VI fails to comply with Rule 9(b) and is dismissed with leave to amend, with respect to the claim for fraud.[3]

### III. Plaintiffs' Warranty Claims Do Not Satisfy Rule 8(a)

Defendants also seek dismissal of Plaintiffs' warranty claims as inadequately pled because Plaintiffs do not allege that they purchased HDPE Products made by JM Eagle nor that they are consumers of Formosa's resin. The Court agrees that the claims for breach of implied warranty (Count III) and breach of the warranty of merchantability (Count IV) require more than the threadbare allegations set forth in the complaint.[4]

---

[3] Defendants also contend that Plaintiffs fail to plead facts supporting an award of punitive damages. Because the Court is permitting Plaintiffs to amend their claims for fraud, for which punitive damages may be available, the Court denies as moot JM Eagle's request to strike the prayer for punitive damages. *See Kang v. Harrington*, 59 Haw. 652, 587 P.2d 285 (1978).

[4] The elements of these claims are as follows:

> In a breach of implied warranty of merchantability claim, Plaintiff must show (1) the seller is a merchant of such goods, and (2) the product was defective or unfit for the ordinary purpose for which it is used. . . . In a breach of implied warranty for fitness of purpose claim, Plaintiff must prove that (1) Plaintiff desired a product for a particular purpose, (2) Defendants had reason to know about this purpose, and (3) the product sold to Plaintiff failed to meet that purpose.

*Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1035 (D. Haw. 2006) (quoting *Neilsen v. American Honda Motor Co., Inc.*, 92 Hawai'i 180, 190-91, 989 P.2d 264, 274-75 (App. 1999)).

The complaint does not allege which JM Eagle products were purchased and installed, when and where such products were installed, when Plaintiffs first detected the defects they claim plague Defendants' products, or what steps they took to investigate the defects. The complaint vaguely alleges that "JM Eagle's HDPE Products and/or HDPE Products manufactured by the Doe Manufacturing Defendants were in Plaintiffs' service areas in the laterals that run from the main service lines to the water meters." Complaint ¶ 20. With respect to Formosa, there are no facts alleged supporting a reasonable inference that its resin was implicated in any specific product failures or caused the leaks and bursts in the pipes. These bare allegations reciting the elements of a warranty claim fall short under *Iqbal* and *Twombly* and do not satisfy Rule 8(a). *See Iqbal*, 556 U.S. at 662 (Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Accordingly, Counts III and IV are dismissed with leave to amend.

IV. **Statutes of Limitations**

In addition to the foregoing, JM Eagle seeks dismissal of Plaintiffs' various counts based on the applicable statutes of limitations. Because the Court is granting Plaintiffs leave to amend certain claims, it does not reach these arguments at this

15

time.  Moreover, the statute of limitations is an affirmative defense that appears to be more appropriate for disposition at the summary judgment stage, rather than on a motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, J-M Manufacturing Company, Inc. and Formosa Plastics Corporation, U.S.A.'s Motions to Dismiss are HEREBY GRANTED. Plaintiffs are permitted leave to file an amended complaint in conformity with this order by **December 30, 2014**.

IT IS SO ORDERED.

DATED: November 25, 2014 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

Launiupoko Water Co., et al. v. J-M Manufacturing Company, Inc., et al.; Civil No. 14-00303 DKW-KSC; **ORDER GRANTING J-M MANUFACTURING COMPANY, INC. AND FORMOSA PLASTICS CORPORATION, U.S.A.'S MOTIONS TO DISMISS**